356 So.2d 596 (1977)
UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation
v.
Robert A. JONES.
SC 2449.
Supreme Court of Alabama.
December 9, 1977.
As Corrected on Denial of Rehearing April 7, 1978.
Spain, Gillon, Riley, Tate & Etheredge and Allwin E. Horn III, Birmingham, for appellant.
Lydia Quarles of Emond & Vines, Birmingham, for appellee.
JONES, Justice.
This appeal brings for review the judgment of the Circuit Court of Jefferson County, the Honorable Ingram Beasley, presiding, in a personal injury suit pursuant *597 to Tit. 26, § 312.[1] On September 28, 1976, the jury returned a verdict against United States Fidelity & Guaranty Company for the sum of $21,425 for alleged injuries to Robert A. Jones resulting from an industrial accident proximately caused by Appellant's negligent inspections. The trial Court granted a credit of $4,150 for workmen's compensation benefits previously paid, thus reducing the total judgment to $17,275.
On May 1, 1974, Jones, a millwright with the Daniel Construction Company, suffered injuries when he fell from a scaffold while cleaning a turbine at the Farley Nuclear Plant near Dothan. This action is based upon Appellant's alleged negligent inspection of that plant, and, more particularly, of the scaffold work area.
The scaffolding surrounded the turbine at a height of eighteen feet. Jones, while cleaning the turbine with an air hose, fell through a gap in the boards which crossed the turbine from the scaffolding on one side to the other. These crossing boards were lapped and nailed together. A hole, approximately twelve inches square, remained, however; and it is through this hole that Jones fell and was injured.
As the workmen's compensation insurance carrier for Daniel, U.S.F.&G. was authorized (but not required) to perform certain safety inspections of the job site. It is undisputed that agents of U.S.F.&G. had performed inspections, approximately monthly, for several years prior to the injury made the basis of this suit. The jury found that Jones's injuries were proximately caused by U.S.F.&G.'s negligent inspections of the premises, and judgment was entered pursuant to the reduced verdict amount. We affirm.
U.S.F.&G. contends that the trial Court committed error by not entering a directed verdict at the end of Jones's evidence, and, again, at the end of all the evidence. Under established Alabama law, the function of an appellate court in reviewing a motion for directed verdict is to review the tendencies of the evidence most favorably to the nonmoving party. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala.1976); Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). Thereafter, it is only where there is no evidence tending to support the plaintiff's case that the Court may direct a verdict for the defendant. Rule 50(e), ARCP; Stonewall Insurance Co. v. Lowe, 291 Ala. 548, 284 So.2d 254 (1973); and Merchants Bank v. Cotton, 289 Ala. 606, 269 So.2d 875 (1972).
U.S.F.&G. insists that a party may be found guilty of a negligent gratuitous inspection only where compliance with the Second Restatement of Torts has been shown. It asserts that no evidence was introduced in support of either of the three types of tort found in the applicable section of the Restatement.
The Restatement of Torts, Second, § 324A, provides:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971), cites the Restatement as authority for its holding that Alabama recognizes the tort of negligent inspection by a workmen's compensation insurance carrier. This, however, was merely persuasive authority for its recognition that the tort had, in effect, existed at common law. Beasley, at 193-94, 249 *598 So.2d 844. See Macke v. Sutterer, 224 Ala. 681, 141 So. 651 (1932); and H. H. Parker & Brothers v. Hodgson, 172 Ala. 632, 55 So. 818 (1911). The law, simply stated, is that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care. Beasley, supra. The record is replete with evidence that U.S.F.&G. did inspect the premises on a periodic basis. The hole in the platform was within sight of anyone in the vicinity; therefore, there was evidence from which the jury could infer that the inspections were negligently performed. Thus, the motion for directed verdict was properly denied.
Moreover, even should we superimpose the three subsections of § 324A onto the facts of this case (a proposition clearly not required by Beasley), a directed verdict would not be proper. Though reliance by Jones was neither plead nor proven, the other two subsections remain viable. Restatement of Torts, Second, § 324A. (Note the conjunctive use of the word "or" following both subsections "[a]" and "[b]"); Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964); and 3 Cum.Sam.L.Rev. 118 (1972).
As authority for its contention that the second subsection is similarly unsupported, U.S.F.&G. cites Davis v. Liberty Mutual Insurance Co., 525 F.2d 1204 (5th Cir. 1976); Tillman v. Traveler's Indemnity Co., 506 F.2d 917 (5th Cir. 1975); and Stacy v. Aetna Casualty & Surety Co., 484 F.2d 289 (5th Cir. 1973). These cases hold, inter alia, that, because the employer had safety personnel of its own, and conducted safety meetings, the insurer (U.S.F.&G.) could not have "undertaken to perform a duty owed by the other [Daniel] to the third person [Jones]." This, however, overlooks the maxim that parties may be jointly and severally liable. U.S.F.&G. may be held liable regardless of the liability of Daniel; and this for the reason that U.S.F.&G. may be a contributing or joint tort-feasor. It is only the Workmen's Compensation Acts which prevent suit against Daniel. Tit. 26, § 262, et seq., Code. See Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937). This, however, does not prevent the liability of U.S.F.&G. Beasley, supra; and Gentry, supra. Therefore, because there was sufficient evidence to submit this issue to the jury, the motion for directed verdict was properly denied.
Appellant next contends that contributory negligence was proved as a matter of law. The burden of this plea is upon the defendant. The question is one of law for the Court only when the facts are such that all reasonable men must draw the same conclusion therefrom. It is a question for the jury when, under the facts and circumstances, reasonable minds may fairly differ upon the issue of negligence. Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972); Southern Railway Co. v. Carter, 276 Ala. 218, 160 So.2d 628 (1963); and Mackintosh v. Wells, 218 Ala. 260, 118 So. 276 (1928). This, however, cannot be viewed from the vantage of hindsight. The fact that a jury did not find contributory negligence is no evidence that it was properly submitted to the jury in the first instance.
Though it is apparent that Jones had knowledge of the hole, his appreciation of the danger of that opening, the voluntariness of his encounter with the danger, and his use of due care were issues properly submitted to the jury. Beasley, supra. As to these requisites of the defense of contributory negligence, the burden of proof rests upon U.S.F.&G.; and this issue, submitted on appropriate instructions, was resolved by the jury adverse to the defendant. Beloit, supra; Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975); Kingsberry Homes Corp. v. Ralston, 285 Ala. 600, 235 So.2d 371 (1970); and Mackintosh, supra.
Appellant's other contentions are also without merit. The fact that the trial Judge incorrectly stated that Jones had alleged reliance in his complaint does not, necessarily, mandate reversal. Precise accuracy in the analysis of some concept is not required, and no new theory of recovery was introduced. Hammett v. Birmingham Railway, Light & Power Co., 202 Ala. 520, *599 81 So. 22 (1919). Further errors allegedly contained in the charge must be deemed harmless because the charge, when taken as a whole, is a sound and correct statement of the law. No prejudicial harm has been shown. Rule 61, ARCP; Underwriters National Assurance Co. v. Posey, 333 So.2d 815 (Ala.1976); Taylor v. Owen, 294 Ala. 543, 319 So.2d 672 (1975); and Pybus v. McKinney, 277 Ala. 419, 171 So.2d 235 (1965).
U.S.F.&G.'s assertion that certain requested charges were improvidently refused is also fallacious. The two charges concerning reliance (Nos. 83 and 84) were properly refused because they were misleading. Louisville & Nashville Railroad Co. v. State, 276 Ala. 99, 159 So.2d 458 (1963). Reliance is not an absolute requisite of the tort. Beasley, supra. The other charges (Nos. 9, 13, 19, 20, 21, 22, 23, 28, 38, 75 and 107) were properly refused because the Court's oral charge substantially covered these subjects. Bateh v. Brown, 293 Ala. 704, 310 So.2d 186 (1975); and Walker County v. Davis, 221 Ala. 195, 128 So. 144 (1930).
Because the issues involved in this case were properly submitted to the jury, and because no error consists in the issues presented, the judgment of the trial Court is due to be affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, SHORES and EMBRY, JJ., concur.
TORBERT, C. J., and MADDOX, ALMON and BEATTY, JJ., dissent.
MADDOX, Justice (dissenting).
I respectfully dissent.
As I stated in my dissent in Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971), I thought that a workmen's compensation insurer was assimilated to the employer. I still hold to that view. While this accident occurred in 1974, the legislature, in 1975, amended the definition of "employer" to leave no doubt that my interpretation in Beasley was correct. See Act No. 86, 4th Ex. Sess. 1975, p. 2729; codified as § 25-5-1, Code 1975.
I also believe the case should be reversed on the merits.
TORBERT, C. J., and ALMON, J., concur.
BEATTY, Justice (dissenting).
I dissent.
The principal issue in this case is whether the defendant, USF&G, was negligent in its inspections of the Farley Nuclear Plant when it inspected the premises for the Daniel Construction Company. That is to say, there must have been evidence of negligent inspections.
The majority opinion states that "The record is replete with evidence that U.S.F.&G. did inspect the premises on a periodic basis. The hole in the platform was within sight of anyone in the vicinity; therefore, there was evidence from which the jury could infer that the inspections were negligently performed." I take it that this means that because there was a hole in the platform visible to many, that the inspections were negligently performed.
I have searched the record and I do not find any evidence supporting the slightest inference that the inspections were negligently performed, and since the majority disagrees with this position, the least that should be done is to point out those parts of the record in which such an inference can be so easily disclosed.
On page 561-562 of the record the following exchange occurred:
[Testimony of Emmett George, Jr., Assistant Superintendent]:
"Q Were there any other openings in the floor of the scaffold that the men walked on?"
"A Only in the area around the rotor blades."
"Q And, how big were those openings?"
"A I would approximate 10 or 12 inches."
"Q Was it big enough for a man to fall through?"
"A I could probably get through it."
"Q Was it necessary for those openings to be there?" (emphasis added)

*600 "A Yes." (emphasis added)
"Q Could the size of the openings have been reduced?"
"A Do you want me to answer that?"
"Q Could the opening have been reduced?"
"Q Well, I want to know why the opening was that particular size."
"A So that we wouldn't have any trouble in rotating the rotor. You see, these blades on this thing were very expensive, and when you set these things, you have got to set them within a certain tolerance. They have to be welded in there. You have to grind, you have to magniflux and x-ray these things. For what he did, it was necessary."
"Q So, you are saying that's the absolute minimum the holes or openings could have been to serve the purpose that was needed?"
"A It could have been closer."
"Q Could have been closer?"
"A But, under the circumstances and the way we were working, it was adequate." (emphasis supplied)
On page 563-564 of the record the following exchange is reported:
"Q Were any complaints made to you or, if you know, to your father [the Superintendent] from anybody regarding the scaffold from which Robert Jones fell?"
"A No."
"Q Were any written complaints made to you by anyone?"
"A No."
"Q And no oral complaints were made?"
"A To the best of my recollection, no."
"Q So, you are stating for the record that in regard to this particular scaffold, nobody ever made a complaint to you that it was unsafe or dangerous?"
"A No."
"Q Do you know if anybody made such a complaint or complaints to you father?"
"A To the best of my recollection, they did not."
"Q Now, if the scaffold that Jones was working on at that time had, in your opinion, been improperly constructed and was dangerous or unsafe, what would your duty have been as you understand your duty at that time as assistant superintendent? What would your duty have been under those circumstances?"
"A What I have done?"
"Q What would you have done if, in your opinion"
"A The scaffold was unsafe?"
"Q The scaffold that Jones fell from was unsafe or dangerous?"
"A I would stop the people from working on it until it was properly safe."
I fail to see how any of this testimony establishes negligent inspections. I disagree with the majority's conclusion on the merits and therefore I would reverse and remand for a new trial.
NOTES
[1] No. 86, S. 80, § 10, 1975 Ala. Acts, amends this section to exclude from liability workmen's compensation insurance carriers. The case before us, however, arose prior to this amendment and is not governed by it.