This appeal comes to us from the Circuit Court for Chambers County. Barbara A. Robinson, as administratrix of the estate of Thomas Gene Robinson, brought a wrongful death action against Alabama Power Company, Cora Smith, and the estate of Robert L. Smith, because of the electrocution of Thomas Gene Robinson. The case was tried before a jury, which returned a verdict for all defendants. Plaintiff moved for a new *Page 23 
trial on numerous grounds, including the ground that the trial court erred in charging the jury on the duty owed by Alabama Power Company. On that ground the trial court granted plaintiff a new trial as to Alabama Power Company. Appellant asks our review of the propriety of the trial court's action in granting plaintiff a new trial. Additionally, Alabama Power Company contends that the trial court erred by not granting its motion for a directed verdict.
The resolution of two issues is dispositive of this appeal. The first is did the trial court err in granting plaintiff a new trial in holding that it erroneously charged the jury on the duty owed by Alabama Power Company (defendant) in maintaining its power lines? The second issue is, did the trial court err in denying defendant's motion for a directed verdict? We answer the questions posed by both issues in the negative and thereby affirm the judgment of the trial court.
Thomas Gene Robinson (Robinson) was electrocuted along with Robert L. Smith (Smith) on April 10, 1975, at the Smiths' residence. The accident occurred while Robinson was helping take down a 36-foot antenna that was to be repaired. Testimony indicated that both he and Smith discussed and recognized the danger of electrocution if, during its removal, the antenna came into contact with a series of defendant's power lines that ran parallel, along Smith Street to the Smith house. One of those lines carried 7200 volts. Another series of defendant's lines supplied electricity to the Smith home. This series consisted of a 110-volt three wire service drop. There was testimony that the service drop lines were covered with a weatherproofing which gave the appearance, but not the full protection, of insulation. From the record it does not appear that Robinson was aware of the uninsulated nature of the 110-volt lines.
Roger Noles also was present at the scene of the accident and assisted in taking down the antenna. Smith, Noles, and Robinson decided to "walk down" the antenna, rather than dismantle it. Noles climbed to the roof of the Smith house and loosened a clasp securing the antenna, but retained a hold on it. Smith remained on the ground to hold the antenna. When Noles loosened the clasp, Smith called for assistance. Robinson came to his aid and helped hold the antenna. Noles then released his hold, leaving Smith and Robinson holding the antenna. Next, the antenna came into contact with one or more of defendant's power lines, resulting in the electrocution of Robinson and Smith.
Defendant argues that the trial court erred by granting plaintiff's motion for a new trial. Defendant contends that the trial court's charge was not prejudicial to the plaintiff, but if the charge was given in error, it erred in favor of the plaintiff. The trial court's charge to the jury explaining the duty owed by Alabama Power Company was as follows:
 What are the duties owed in this case by these Defendants? What is the duty owed by Alabama Power Company in this case? The Alabama Power Company is under a duty to conduct and operate its electric utility business in a reasonably safe and prudent manner so as to avoid unreasonable risks and dangers to its customers and to the public. The Power Company in this case was under a duty to use and follow the various operating and engineering practices which were at the time of this accident generally recognized and accepted as safe and prudent under the same or similar circumstances by electric utility companies throughout the country. So at the time of the accident in question that was the duty owed by the Power Company. [Emphasis added.]
We are of the opinion that the trial court's charge had the effect of establishing industry standards as the duty owed by Alabama Power Company. That was error. The case of AlabamaPower Co. v. Bryant, 226 Ala. 251, 146 So. 602 (1933), involved a situation where plaintiff's intestate was killed when lightning or atmospheric electricity was conducted over Alabama Power's service line into plaintiff's home. *Page 24 
There, Alabama Power contended that because it used devices and safeguards generally used by other well regulated enterprises, it had established its due care as a matter of law. Justice Foster, on rehearing, speaking for the court rejected that argument.
 [I]f the conduct pursued or the methods adopted in the particular case do not measure up to the ordinary care which would be exercised by a prudent person under the circumstances, negligence may be found to exist notwithstanding such conduct or methods were in accordance with those customarily pursued or adopted. The reason is that the usual mode of doing a particular thing may involve a lack of proper care, and usage cannot avail to establish as safe in law that which is dangerous in fact, nor may a lack of due care be excused because of the fact that carelessness is customary at the place at which, or in connection with the occupation or undertaking in which, the injury occurred. So also, the circumstances of a particular situation may be such as to call for more vigilance and caution than might ordinarily be regarded as sufficient.
 What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.
Alabama Power Co. v. Bryant, at 256, 146 So. 602.
The defendant argues that if there was error in the trial court's charge, it was error in favor of the plaintiff because Alabama Power was held to a higher standard of care or duty than was required. Alabama power contends that the trial court held it to the duty of an insurer when the jury was charged that Alabama Power was required to use and follow the operating and engineering practices that were recognized as "safe and prudent." The defendant is correct in its assertion that a party who receives a more favorable charge than he is due cannot make the giving of that charge the ground for a new trial. Pound v. Gaulding, 237 Ala. 387, 187 So. 468 (1939). However, we disagree with defendant's interpretation of the charge. Read in its entirety, the above-quoted charge clearly establishes the industry standards as the duty owed by Alabama Power. This was prejudicial error.
Normally, when a charge is misleading, abstract, or incomplete, the entire instruction to the jury is viewed as a whole to determine if error was committed. Price v. Jacobs,387 So.2d 172 (Ala. 1980); Gray v. Mobile Greyhound Park, Ltd.,370 So.2d 1384 (Ala. 1979); Underwriters National AssuranceCompany, 333 So.2d 815 (Ala. 1976); Alabama Power Company v.Tatum, 293 Ala. 500, 306 So.2d 251 (1975). The instant case, however, does not fall within the above rule. We are of the opinion that by equating the industry standards with defendant's duty, the trial court's charge was prejudicially erroneous such that it could not be cured by other proper charges within the instruction. We, therefore, look only to the charge, rather than the instruction as a whole, in determining and holding that plaintiff is entitled to a new trial as to Alabama Power Company. Taylor v. Owen, 294 Ala. 543,319 So.2d 672 (1975); Harris v. Schmaeling, 270 Ala. 547, 120 So.2d 731
(1960). The action of the trial court granting the new trial was, therefore, proper.
We next examine defendant's argument that the trial court erred in not granting its motion for a directed verdict. Our standard of review of a ruling on a request for a directed verdict is clearly defined:
 Where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opponent. When a reasonable inference may be drawn, which is adverse to the party requesting the directed verdict, the directed verdict is properly refused.
Alford v. City of Gadsden, 349 So.2d 1132, at 1135 (Ala. 1979);Alabama Power Company v. Taylor, supra. With the above quoted principles in mind, we consider defendant's position.
The defendant contends the evidence showed that Robinson was *Page 25 
electrocuted when the antenna struck the 7200-volt power line. Various theories are asserted by the defendant as to why the court should have granted its motion. Defendant theorizes that the danger posed by the 7200-volt line was open and obvious and, therefore, it owed no duty to Robinson. Defendant maintains also that Robinson was contributorily negligent, thereby barring recovery against the defendant. These issues we need not consider because we find defendant's main premise to be unfounded. Our review of the record leads us to conclude that the evidence also would support a reasonable inference that the antenna first came into contact with defendant's 110-volt lines, thereby electrocuting Robinson before contact was made with the 7200-volt line. A motion for a directed verdict is granted properly only where
 [T]he facts are such that all reasonable men must draw the same conclusion from them. . . . Unless the evidence is free from doubt or adverse inference, the question is for the jury. Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594.
. . . .
 In civil cases, a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint. . . .
Turner v. Peoples Bank of Pell City, 378 So.2d 706, at 709 (Ala. 1979); Draughon v. General Finance Credit Corp.,362 So.2d 880 (Ala. 1978). The trial court, therefore, properly denied defendant's motion for a directed verdict. We find no error in the trial court's granting plaintiff's motion for new trial and denying defendant's motion for directed verdict. This case is, therefore, affirmed.
AFFIRMED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs specially.